JOSEPH ROBERT GIANNINI, ESQ.
12016 Wilshire Blvd. Suite 5
Los Angeles CA 90025
Phone 310 804 1814
Email holmes@lawyers-inc.com


Attorney for Plaintiffs

## UNITED STATES DISTRICT COURT FOR THE

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LAWYERS UNITED INC., EVELYN AIMÉE DE JESÚS, ALLAN WAINWRIGHT, <br><br>Plaintiffs,<br><br>       vs<br><br>UNITED STATES; MARY MURGUIA, CHIEF JUDGE NINTH CIRCUIT JUDICIAL COUNCIL, WILLIAM H. PRYOR, JR, CHIEF JUDGE ELEVENTH CIRCUIT JUDICIAL COUNCIL; RICHARD  SEEBORG, CHIEF JUDGE OF THE NORTHERN DISTCT OF CALIFORNIA, AND HIS HON. JUDICIAL COLLEAGUES, EDWARD M. CHEN, VINCE CHHABRIA, JAMES DONATO, WILLIAM H. ORRICK, HAYWOOD S. GIILLIAM; YVONNE GONZLES ROGERS, JON S. TIGAR, EDWARD J. DAVILLA, BETH LARSON FREEMAN, TIMOTHY CORRIGAN, CHIEF JUDGE OF THE MIDDLE | Case No.:<br>COMPLAINT FOR INJUNCTIVE & DECLARATORY RELIEF TO INVALIDATE U.S. DISTRICT COURT "LOCAL RULES" THAT DENY EQUAL & GENERAL ADMISSION PRIVILEGES TO LICENSED SISTER-STATE ATTORNEYS IN GOOD STANDING UNDER:<br>1.  28 U.SC.  §  1738;<br>2.  SEPARATION OF POWERS;<br>3. 28 U.SC. §§  2071-72, 332(d)(4);<br>4. FIRST AMENDMENT:<br> • PETITION FOR REDRESS OF GRIEVANCES;<br> • PRIOR RESTRAINT;<br> • RIGHT TO ASSOCIATION WITH COUNSEL AND AVOID COMPELLED ASSOCIATION;<br> • CONTENT DISCRIMINATION, |

COMPLAINT

1

DISTRICT OF FLORIDA AND HIS
ACTIVE DISTRICT COURT
COLLEGUES.

Defendants,

- VIEWPOINT
  DISCRIMINATION,
- SPEAKER
  DISCRIMINATION;

5.  FIFTH AMENDMENT EQUAL
PROTECTION;
6. CODE OF CONDUCT FOR U.S.
JUDGES AND FIFTH AMENDMENT
DUE PROCESS;
 7. DECLARATORY JUDGMENT (28
USC § 2201)

# INTRODUCTION

1. This case concerns the fiduciary non-delegable duty of  United States Article III Courts to serve as a trustee of our Constitution, the Article III Court's abdication of this sacred duty, and District Judges enacting local  Rule legislation far in excess of Constitutionally and statutorily defined narrow limits. It is about Article III Court judges not recusing themselves when they have a statutory duty to do so.  "A trustee is held to something stricter than the morals of the market place. Not honesty alone, but the punctilio of an honor the most sensitive, is then the standard of behavior" *Pegram v. Herdrich*, 530 US 211, 225 (2000).

COMPLAINT

2. In *Frazier v. Heebe*, 482 US 641 (1987), an experienced litigator's application for *general* admission to the bar for United States District Court for the Eastern District of Louisiana was denied because he neither lived nor had an office in Louisiana, as required by the court's local Rules. The judges on the court recused themselves. An outside judge conducted a bench trial and upheld his colleague's local Rules. The Fifth Circuit affirmed holding these local Rules were *rational*. Federal judges by definition are *rational*. They are nominated by the President, confirmed by the Senate and provided life tenure. Everything a judge does while robed can be classified as *rational*. The Supreme Court exercising its *supervisory* power reversed. It stated: "The question for decision is whether a United States District Court may require that applicants for general admission to its bar either reside or maintain an office in the State where that court sits. *Id.* at 642-43. The Court held, "we find the in-state office requirement unnecessary and irrational." *Id*. at 649. It also found the residence requirement was unnecessary and irrational. The Court further explained, "the location of a lawyer's office simply has nothing to do with his or her intellectual ability or experience in litigating cases in Federal District Court." *Ibid*. "We are unwilling to assume that a nonresident lawyer — any more than a resident — would disserve his clients by failing to familiarize himself [or herself] with the [local] rules." *Id*. at 647. The Court further held the "availability of

COMPLAINT

appearance *pro hac vice* is not a reasonable alternative for an out-of-state attorney who seeks general admission to the Eastern District's Bar." *Id*. at 650. The Court in exercising its *supervisory* review in conformity with 28 U.S.C. § 2072 held:

> Rules that discriminate against nonresident attorneys are even more difficult to justify in the context of federal-court practice than they are in the area of state-court practice, where laws and procedures may differ substantially from State to State. (internal cites omitted)There is a growing body of specialized federal law and a more mobile federal bar, accompanied by an increased demand for specialized legal services regardless of state boundaries. (internal cites omitted) The Court's supervisory power over federal courts allows the Court to intervene to protect the integrity of the federal system, while its authority over state-court bars is limited to enforcing federal constitutional requirements.

3. The *Frazier* Court in exercising its supervisory review under 28 U.S.C. § 2072 and applying a "rational and necessary" standard cited with approval *Supreme Court of New Hampshire v. Piper*, 470 U.S. 284 (1985). There, the Court held an attorney's opportunity to practice law is a fundamental right and constitutionally protected, thus applying a strict scrutiny standard in *Piper,* and holding that state supreme court discrimination against out-of-state attorneys in bar admission was unconstitutional. The *rational* and *necessary* standard is further virtually identical to the *necessary* and *proper* standard for the Article I enumerated legislative powers. There is an enormous difference *rational* basis review, which in practice means no judicial review, and *rational* and *necessary* standard as there is an enormous difference between a chestnut and a chestnut horse.

COMPLAINT

4

4. After *Frazier* was decided, Congress amended the *Rules Enabling Act* including 28 U.S.C. § 2072. Congress meticulously circumscribed "Local Rule making" discretion. First, it legislated an expanded supervisory role for the Judicial Councils in the District Court local Rule -making process.  (Exhibit A1-2) 28 U.S. Code § 332 (d)(4) provides:

> Each judicial council shall periodically review the rules which are prescribed under section 2071 of this title by district courts within its circuit for consistency with rules prescribed under section 2072 of this title**.** Each council may modify or abrogate any such rule found inconsistent in the course of such a review.

5. According to the Congressional Reporter, the "amendment § 332 to add a new paragraph (d)(4) was a consequence of widespread discontent," communicated to Congress, about "a proliferation of local Rules." (Exhibit A1)  Congress found that the rule-making procedures "lacked sufficient openness" and that local Rules often "conflict with national rules of general applicability." *Ibid.* Congress also placed on the judicial councils a mandatory periodic duty of review because it concluded "effective appellate review of such a [local] rule [is] impossible sometimes, impractical most times, and impolitic always" (Exhibit A2)  because the judges who enact the local Rules decide whether they are lawful.  "There is no such thing as a rule's becoming sacrosanct merely for having passed judicial scrutiny the first time. It is subject to ongoing scrutiny." *Id*.

COMPLAINT

6. Congress also legislated an interlocking standard of review for District Court local Rules that is stricter than strict scrutiny. Section 2071(a) provides:

The Supreme Court and all courts established by Act of Congress may from time to time prescribe rules for the conduct of their business. *Such rules shall be consistent with Acts of Congress and rules of practice and procedure prescribed under section 2072 of this title.* (Emphasis added)

28 U.S. Code § 2072 (b) provides:

*Such rules shall not abridge, enlarge or modify any substantive rights.* (Emphasis added)

7. Thus, the standard of review set forth in § 2071(a) for local Rules is incorporated by reference into the standard of review for nationally promulgated rules set forth in § 2072(b). This standard makes perfect sense because judges are not legislators. Congress commanded local Rules shall provide an even playing field. The home team does get to start the game with a home run lead. Judges are supposed to call balls and strikes: Not legislate.

8. There is no difference in attorney licensing regardless of the state of admission or office location in the United States Supreme (Supreme Court Rule 5), U.S. Courts of Appeal (FRAP 46), or practice before federal administrative agencies (5 U.S.C. § 500(b)) as there is no difference in marriage license qualifications based on state law. These Rules are nationally enacted. The local Rules in 1/3 of the 94 District Courts also do not discriminate for or against any class of citizens.

COMPLAINT

9.   However, the local Rules in 2/3 of the 94 United States District Courts create classes of citizens and lawyers. The vast majority of the states in which these District Courts are located provide a back door for federal *general* reciprocal licensing via admission in the forum state, upon payment of usually around a $1,000 poll/petition tax, admission on motion for experienced attorneys or transfer of UBE scores.  However, in the States of California and Florida, there is no back door to federal admission. Under the challenged local Rules in California and Florida, a licensed sister-state attorney in order to obtain general admission in the U.S. District Courts has to reinvent the wheel and retake an entry-level state bar exam.   Plaintiffs allege these local Rules exceed the rule-making authority of the United States District Courts.  Plaintiffs further allege the Ninth and Eleventh Circuit Judicial Councils have failed to curb this abuse of a public trust as is required by 28 U.S.C. § 332(d)(4), despite numerous requests they do so.

10. The Florida and California local Rules are mirror opposites.  If a citizen from California sues a citizen from Florida on a federal claim in federal court, the Florida citizen or corporation is also a party. If the first to file or venue is in California, it is arbitrary and irrational to compel the Florida citizen to hire a California lawyer. Likewise, if venue is in Florida, it is equally arbitrary to compel the California citizen to hire a Florida lawyer on the identical federal claims. The

COMPLAINT

7

same holds true on jurisdiction based on diversity. Diversity claims are also governed by the *Federal Rules of Civil Procedure*. The purpose of diversity jurisdiction is to provide a neutral and national forum. That purpose is defeated by the local Rule reliance on forum state law on both federal and diversity claims in two-thirds of the district courts.

11. The Supreme Court has never decided this local Rule attorney licensing question on the merits, despite eight or nine petitions for certiorari requesting that it do since *Frazier* was decided 35 years ago. These local Rules compel citizens in all 50 states to choose a lawyer from the forum state or forfeit the right to counsel. They grant a monopoly; A patent on the First Amendment substantive rights. Congress in promulgating and amending  28 U.S.C. §  2072(b)  commanded that local Rules "shall not abridge, enlarge, or modify any substantive rights."  Thus, the challenged local Rules on their face   in a single sweep "abridge" and "modify" every enumerated Constitutional and substantive right enacted by Congress and double-down by "enlarging" and providing a monopoly and patent on access to the District Courts to forum state licensed lawyers.

12. Madison, writing in *The Federalist* 47, explicitly warned against the tyranny that would result if Judges were to self-appoint themselves as legislators:

> The accumulation of all powers, legislative, executive, and judiciary, in the
> same hands, whether of one, a few, or many, and whether hereditary, self-

COMPLAINT

appointed, or elective, may justly be pronounced the very definition of tyranny.

………

Again: "Were the power of judging joined with the legislative, the life and liberty of the subject would be exposed to arbitrary control, for THE JUDGE would then be THE LEGISLATOR.

13. The challenged Rules enacted by District Judge vote carried out behind closed doors undermines *The Federalist* 47. It is the very definition of tyranny for judges to wear a second hat as legislators.  These Rules undermine *The Federalist #80,* "the peace of the WHOLE ought not to be left at the disposal of a PART."

14. The *Federal Rules of Civil Procedure* "govern the procedure in all civil actions and proceedings in the United States district courts."  FRCP 1. Hence, the scope applies to all federal actions and proceedings.  The purpose is  "to *secure the just, speedy, and inexpensive determination of every action* and proceeding. (Emphasis added) *Ibid.*  The *Federal Rules of  Civil Procedure* 83(a)(1) command: "A local Rule   must be consistent with… federal statutes and rules adopted under 28 U.S.C. § 2072." The challenged local Rules do not "secure the just, speedy, and inexpensive determination of every action:*"*  (i) when all lawyer in 1/3 of the District Courts can obtain *general* admission privileges by filing a certificate of good standing, paying a District Court admission fee of $200; (ii) other lawyers admitted by reciprocity or UBE transfer can obtain *general* admission privileges by filing a

COMPLAINT

certificate of good standing, paying a District Court admission fee of $200, and paying a 1,000 dollar poll tax to a mandatory state bar association; (iii) and lawyers in the Golden State can obtain *general* admission privileges by filing a certificate of good standing, paying a District Court admission fee of $200, paying an almost $2,000 poll tax to a mandatory state bar association, and then having to reinvent the wheel and pass a 100% subjective entry-level licensing test that has a *standard error of measurement* shoddier than .48, and fails more than 60% of experienced attorneys on the July bar exam. The Florida local Rules impose a similar medieval ritual similar to the 17th Century content-based licensing of printing presses. A blind person can see these non-uniform local Rules defeat the scope and purpose of the *Federal Rules of Civil Procedure*.

15. The *Wall Street Journal* on September 29, 2020 published the results of an investigation that found that 130 federal judges in 685 court cases since 2010 improperly failed to disqualify themselves. Nearly one out of five federal judges who disclosed their stock ownership heard cases where they owned stock in one of the corporate parties. This pattern of Article III judges chronically neglecting to recuse themselves is also front and center as Judge JANICE ROGERS BROWN violated the recusal statute in writing the panel's decision in *NAAMJP v. Howell*, 851 F.3d 12 (D.C. Cir. 2017) *cert. denied*. This published decision is the leading

COMPLAINT

lower court binding precedent. On information and belief, JANICE ROGERS BROWN was either collecting a pension from the California Supreme Court when she decided *Howell* or she is now collecting a pension from them, as well as the United States government. Even if she was not collecting a California judge pension when she wrote the panel's decision in *Howell*, her personal and vested financial relationship and being a defendant while serving on the California Supreme Court in prior litigation about the California licensing process for sister-state attorneys undermines her impartiality. It creates the appearance of bias.  Judge BROWN should have recused herself. Judge BROWN's decision nullifies *Frazier*, FRCP 1 & 83, 28 U.S.C. § 2072(b), and 332(d)(4) by holding only the Supreme Court has supervisory review over local Rules. Judge BROWN's decision is the product of "US" hostility against "THEM" and against anyone who challenges the local guild.

16.  Another reason for this ongoing and impermissible uneven playing field arises from the Supreme Court's not exercising its *supervisory* responsibility as a result of lower court sophistry. Judges are keenly aware the Supreme Court grants review in less than one in a hundred certiorari petitions. They are keenly aware a *rational* judge can easily *rationalize* any decision. In *Howell*, panel chair Judge BROWN applied *rational* basis review and thus side-stepped *Frazier* by holding the Supreme Court "*exercised its own unique supervisory authority*" (emphasis in

COMPLAINT

original) and "No similar authority vests in a single district judge." 851 F. 3d at 18.

"A single district court judge or an appellate panel may not usurp that body's authority." *Ibid*.   The upshot of the BROWN panel's decision is only the Supreme Court can provide judicial review. The overarching fundamental flaw in the BROWN panel and other court decision upholding local Rules is the application of *rational* basis review. When federal judges review their own decisions based on *rational* basis review there is no review. Cf. *Marbury v. Madison*, 5 U.S. 137 (1803).

17. Many Article III judges have a personal interest and financial stake in preserving monopoly protecting local Rules. Unlike the Justices on the Supreme Court, many District Judges resign or retire and earn $10,000 a day conducting private arbitrations. Some pay attention, to who served as their sponsors and their future livelihood, including judgeships in the state courts, where their compensation and local standing can be enriched. The unintended consequence of the BROWN panel's decision is judges have the same rights as Kings. They can enact any legislation they want as long as it is *rational* and only the Supreme Court has supervisory review.

18. United States Judges serving on the United States Court of Appeals for the District of Columbia, the most prestigious Circuit in America, have been presented with this violation of the recusal statute evidence in *Lawyers United Inc.*

COMPLAINT

12

*v. United States DC docket* 20-5269 and requested to re-examine Judge BROWN's opinion applying rational basis based on subsequent Supreme Court precedent that directly undermines the BROWN panel's decision. Confronted with the choice of disclosing or concealing Judge BROWN'S violation of the recusal statute, the D.C. Circuit Court of Appeals circled the wagons and issued a one paragraph decision upholding *Howell* as binding precedent.

19. These local Rules are identical to a sign on the United States Courthouse door saying BLACKS and JEWS barred from entering.

20. In *Plessy v. Ferguson*, 163 U.S. 537 (1896)**,** Supreme Court justice HENRY BILLINGS BROWN authored the infamous decision that upheld the separate but equal doctrine as rational. In this 21st Century, Judge JANICE ROGERS BROWN authored the decision upholding local Rules as rational that provide American citizens and lawyers the same substantive as Homer Plessy. Judge BROWN's decision squarely holds lawyers do not have any substantive rights that are implicated by local Rules. Plaintiffs aver this is an aberration that must be set aside.

### JURISDICTION AND VENUE

21. This District Court has jurisdiction under 28 U.S.C. § 1331. Venue is appropriate in San Francisco, where both the Northern District of California and

COMPLAINT

13

Ninth Circuit are headquartered.  Jurisdiction and venue against the United States and the out-of-state defendants is provided by  28 U.S.C. § 1391(e);  *Stafford, U.S. Attorney v. Briggs*, 444 U.S. 527,   534 (1980).[1] Accord *United States v. Windsor*, 133 S.Ct. 2675 (2103), holding the United States government is bound to afford gay and lesbians Fifth Amendment Equal Protection and their marriage licenses full faith and credit.

## PARTIES

22.   Plaintiff LAWYERS UNITED INC. is a corporation organized under California law with offices in Los Angeles, CA. Like *Citizens United v. Federal Election Commission*, 130 S.Ct. 876 (2010) holding corporations have First Amendment rights, Plaintiff is engaged in interstate commerce and advocacy. As a consumer of legal services and as an advocate, Plaintiff is directly injured by local Rules that compel it to associate and compel it to make payments to a mandatory public union as a condition precedent to exercise its federal rights in the United States  Courthouse.

---

[1] "The purpose of this bill [Section 1391 (e) amendment] is to make it possible to bring actions against Government officials and agencies in U.S. district courts outside the District of Columbia, *which, because of certain existing limitations on jurisdiction and venue, may now be brought only in the U. S. District Court for the District of Columbia.*" *Id.* at 539-40. (Emphasis in original).

COMPLAINT

23. Plaintiff has a constitutional duty to vindicate federal rights and champion locally unpopular federal claims. "An association can bring claims on behalf of its members." *See Summers v. Earth Island Inst*., 555 U.S. 488, 494, (2009).  Plaintiff LAWYERS UNITED INC., has members and associates who have been deprived of their civil rights by the challenged local Rules. These members and associates are willing to submit Declarations and testify in open Court under oath attesting to their injures. They include lawyers of color, patent lawyers, military veterans, federal practice specialists, and members of the bar in good standing who maintain their principal office in a state where they are not licensed.

24. Plaintiff EVELYN AIMÉE DE JESÚS graduated from the University of Massachusetts at Amherst. She is an American citizen, a graduate of an ABA accredited law school, and a well-qualified Hispanic-American lawyer in good standing since 2002. She is a member of the LAWYERS UNITED INC. She was compelled to move to the mainland because of extensive hurricane damage. She has practiced law federal courts' pro bono and as a civil rights' activist. She is bilingual. Latinos make up 15.8% of the population but only 2.8% of attorneys are Hispanic. Plaintiff alleges this LR discrimination is facially invalid. Plaintiff will apply for general admission when these local Rules are abrogated.

COMPLAINT

25. Plaintiff ALLAN WAINWRIGHT is an experienced lawyer in good standing with 40 years of experience admitted to the New Mexico Supreme Court and multiple federal courts. He moved to Florida as an experienced lawyer to take a position as litigation counsel with a Florida law firm. He is injured because he is disqualified for general admission privileges because he is not a member of the Florida Bar Association, a political trade union that often takes political positions on matters of public concern. He was also injured because his *pro hac vice* status in the Middle District of Florida was revoked because he had an office and residence in Florida. Plaintiff will  apply for admission when these local Rules are abrogated in conformity with FRCP 1, 83(a)(1), and 28 U.S.C § 2072(b).

26. The lead defendant is the United States. *See* 28 U.S.C. § 1391(e)(1)& (2) authorizing suits against the United States and its officials for actions and inaction whereby citizens are injured and nationwide service of process. The United States has been a party in similar law suits challenging government conduct exceeding authorized discretion. See *United States v. Windsor*, *supra*; *New York Times Co. v. United States*, 403 US 713 (1971); *Texas v. United States*, 809 F. 3d 134 (5th Cir. 2015), affirmed by an evenly divided Supreme Court; *Duplantier v. United States*, 606 F.2nd 654 (7th Cir. 1979)

COMPLAINT

16

27   The defendants include MARY MURGUIA, CHIEF JUDGE OF THE NINTH CIRCUIT JUDICIAL COUNCIL and her Judicial Council colleagues. Congress has placed on each Judicial Council under 28 U.S.C. 332(d)(4) a mandatory periodic duty to review District Court local Rules enacted under 28 U.S.C. § 2071 for consistency with 28 U.S.C. § 2072(b) "such rules shall not abridge, enlarge, or modify any substantive rights,"  and authority to invalidate such local Rules. Defendants have repeatedly refused to comply with this Congressional command, thereby injuring Plaintiffs and all similarly situating citizens seeking to vindicate their civil rights in the United States District Courts.

28. The defendants include WILLIAM H. PRYOR, JR, CHIEF JUDGE ELEVENTH CIRCUIT JUDICIAL COUNCIL,  and his Judicial Council colleagues. They are sued for the same reasons set forth in the preceding paragraph.

29. The defendants are RICHARD  SEEBORG, CHIEF JUDGE OF THE NORTHERN DISTICT OF CALIFORNIA, AND HIS HON. JUDICIAL COLLEAGUES, EDWARD M. CHEN, VINCE CHHABRIA, JAMES DONATO, WILLIAM H. ORRICK, HAYWOOD S. GIILLIAM; YVONNE GONZALEZ ROGERS, JON S. TIGAR, JEFFREY L. WHITE  Plaintiffs are injured by this Court's local Rules that trespass 28 U.S.C. § 2072(b) and deny them *equal* general admission privileges. Plaintiffs are deprived of their substantive right to Due Process

COMPLAINT

and a fair and neutral judge because the Northern District's local Rules vicariously adopt the California Supreme Court's sister-state attorney licensing rules.  There are numerous other conflicts of interest between the Plaintiffs on one hand, and on the other hand the judges serving on the California Supreme Court and their counterparts serving on the Northern District of California that create the appearance of bias. These include: (i)  federal judge LUCY KOH'S marriage to California Supreme Court Justice CUELLAR; (ii) California Supreme Court Justice JENKIN'S prior service as a Northern District of California Judge. He resigned to take a higher paying judgeship in the California Appellate Division before he was appointed to the California Supreme Court; (iii) Northern District of California Judge YVONNE GONZLEZ ROGERS application for a vacant position on the California Supreme Court;  (iv) the Northern District of California and the Ninth Circuit's repeated refusal to disclose expert opinion evidence proving  the 100% subjective bar exam that experienced attorneys are required to hurdle in order to obtain *general* admission privileges in the four District Courts in California, has a standard error of measurement shoddier than .48, and it fails numerous testing *Standards. See* Exhibit B attached.

30. The defendants are TIMOTHY CORRIGAN, CHIEF JUDGE OF THE MIDDLE DISTRICT OF FLORIDA AND HIS ACTIVE DISTRICT COURT.

COMPLAINT

COLLEGUES. Plaintiffs aver it is not necessary to individually name as a party every Article III judge ratifying local Rule discrimination for the same reason it is not necessary to name as a party every person injured by the challenged local Rules.

31. It is the province of the Court to say what is the law. *Marbury v. Madison, supra*, 5 U.S. 137 (1803). Defendants have a fiduciary duty as a trustee of the Constitution. They have sworn an oath of office to enforce the terms of the Constitution and dispense justice equally to rich and poor alike. That oath and fiduciary duty has been compromised because lawyers licensed in 49 states have been denied keys to the United States Courthouse in one state. See *The Federalist #80* ("the peace of the WHOLE ought not to be left at the disposal of a PART.")

### FACTS

**A. The *Local Rule* Requirement that Licensed Attorneys in Good Standing Must Pass Another State Entry-Level Bar Exam to Obtain General Admission in the District Courts Constitutes Hazing And an Abuse of Public Trust**

32. The U.S. Supreme Court has held professional norms articulated by the American Bar Association are "(s)tandards to which we have referred as 'guides to determining what is reasonable.'" *Wiggins v. Smith*, 539 US 510, 524 (2003). The ABA has recommended that the U.S. District Court policy of restricting practice privileges to lawyers who are admitted to the State bar in which the district is located should be abrogated. The ABA Recommendation 8A (1995) concluded that "Given

19

COMPLAINT

the global nature of law practice today, parochial local Rules are inefficient, unduly costly to clients and/or lawyers and anti-competitive."

33. The *ABA Commission on Ethics 20-20* (2012) entered a factual finding that there is no evidence that experienced lawyers were a threat to the public or needed to take another bar exam. The *Commission* found no reason to believe that lawyers who have been engaged in the active practice of law for three of the last seven years will be any less able to practice law in a new jurisdiction than a law school graduate who recently passed the bar. The ABA squarely recommends that in light of ever-increasing advances in technology that all states should adopt bar admission on motion for lawyers with three years of experience.  Forty-two states have adopted admission on motion for sister-state attorneys.

34. Likewise, the Uniform Bar Examination (UBE) is a standardized bar examination developed by the NCBE that offers portability of scores across state lines. The UBE is adopted in 38 jurisdictions. The UBE does not test state law.  A novice lawyer admitted in any UBE state is eligible for reciprocal licensing in all UBE states, and thus in the District Courts located in 38 states.

35. Deborah Jones Merritt is the Distinguished University Professor at The Ohio State University Moritz College of Law. She has studied bar exams and attorney licensing process. The result is Merritt & Cornett, *Building a Better Bar*

COMPLAINT

(2020). Prof. Merritt has opined the  best  evidence of "competence" is experience practicing law. As Prof. Merritt states —licensed lawyers have learned a skill set: they know how to practice law.

36. Joan W. Howarth is the Distinguished Visiting Professor, Boyd School of Law, UNLV Dean Emerita, Michigan State University College of Law. Dean Howarth is the author of *SHAPING THE BAR: THE FUTURE OF ATTORNEY LICENSING* (forthcoming 2022, Stanford University Press). She concludes lawyers should be licensed after clinical residencies and not by written exam. She opines the best evidence of an attorney's competence is actually practicing law. According to Professors Merritt and Howarth "skill" is what clients want.

37. Statistics reported in 2019 by the NCBE  report over 16,000 lawyers were provided reciprocal licensing privileges and immunities in a second state that are denied to Plaintiffs.  Every single one of these 16,000 lawyers are categorically disqualified for *general* admission licensing privileges in the Florida and California District Courts.

38. The United States Supreme Court has repeatedly held as a matter of law that an out of state attorney's opportunity to practice law is a *fundamental right and constitutionally protected*. The Supreme Court has repeatedly held that it will not presume that licensed attorneys will violate the rules of professional conduct or

COMPLAINT

betray their public trust or not familiarize themselves with local law. *Supreme Court of New Hampshire v. Piper*, 470 U.S. 274 (1985); *Supreme Court of Virginia v. Friedman*, 487 U.S. 59 (1988); *Frazier v. Heebe*, 482 U.S. 641 (1987).

39. The challenged local Rules presume precisely what the Supreme Court has held it will not presume. They presume what the ABA, NCBE, and licensing scholars have rejected.

### B. Multiple Testing Experts Have Concluded That California's 100% Subjective Bar Exam for Already Licensed Sister-State Attorneys is Not a Valid or Reliable Test

40. *The Standards for Educational and Psychological Testing, (2014),* Published by the American Educational Research Association, American Psychological Association, and the National Council on Measurement in Education (*Standards*) have been incorporated into federal law*; see* 34 CFR 668.148(a)(2)(iv); *AMERICAN SOC. FOR TESTING v. Public. Resource. Org*, 896 F. 3d 437 (D.C. Cir. 2018); *Affirmed Georgia v. Public. Resource. Org, Inc*., 140 S. Ct. 1498 (2020).

41. *The Standards* were developed to "provide criteria for the development and evaluation of tests and testing practices and to provide guidelines for assessing the validity of interpretations of test scores for the intended test uses…. All professional test developers, sponsors, publishers, and users should make reasonable efforts to satisfy and follow the *Standards* and should encourage others to do so. All

COMPLAINT

applicable standards should be met by all tests and in all test uses unless a sound professional reason is available to show why a standard is not relevant or technically feasible in a particular case." *Id*. at 1.

42. Many licensing experts have opined that the California 100% subjective bar exam given to already licensed sister-state attorneys fails to meet licensing *Standards*. *See* Stephen P. Klein, "What Do Test Scores in Texas Tell Us?" (Published 2000 by RAND) Dr. Klein admits:

> "Our research results illustrate the danger of relying on statewide test scores as the sole measure of student achievement when these scores are used to make high-stakes decisions about teachers and schools as well as students. We anticipate that our findings will be of interest to local, state, and national educational policymakers, legislators, educators, and fellow researchers and measurement specialists."

43. Likewise, Dr. Susan Case, the Director of Testing for the NCBE, avows that non-multiple choice format tests, such as *essay* and *performance tests* "because of their limitations, such as low reliability, lack of anonymity, and lack of standardization, should not be used in isolation." *See* Susan M. Case, "Licensure In My Ideal World," *The Bar Examiner*, p. 27 November 2005.

44. Likewise, Dr. Geoff Norman is a nationally recognized testing expert with over 30 years of experience. Dr. Norman is one of the experts writing a chapter in the *Cambridge Handbook of Expertise and Expert Performance*. Dr. Norman writes:

COMPLAINT

23

"Study after study has shown that it is almost impossible to get judges to agree on scores for essay answers."

*See* "So What Does Guessing the Right Answer Out of Four Have to Do With Competence Anyway?" *The Bar Examiner*, p. 21 (Nov 2008).

45. Dr. Phillip L. Ackerman is a Professor of Psychology at Georgia Institute of Technology; the Editor, Journal of Experimental Psychology: Applied; a Fellow of the American Psychological Association and a member of the American Educational Research Association and the National Council on Measurement in Education (these are the three organizations that generate the Standards on Psychological and Educational Testing). Dr. Ackerman wrote the chapter on testing in K. Anders Ericsson, Ed., *The Cambridge Handbook of Expertise and Expert Performance*, and he is one of the leading testing experts in the world. Dr. Ackerman has reviewed the State Bar's Report to the California Supreme Court on the California Bar Examination and other material he deemed necessary to form an expert opinion.

46. Dr. Ackerman's professional opinion is that the Attorney's Examination for experienced sister-state attorneys licensed over four years fails to meet the *Standards for Educational and Psychological Testing*. Multiple Standards have not been met. More particularly, Dr. Ackerman declares, under oath:

COMPLAINT

"The scores on the Attorney's Examination are determined in a manner that is not consistent with professional standards. The reliability of the test scoring procedures fails to reach a level that would be acceptable for high-stakes testing. (Specifically, inter-rater agreement is quite low, a correlation of .48 between raters indicates only 23% shared variance among ratings; source: Klein & Bolus; Gansk & Associates 2003.) An acceptable level of reliability for such high-stakes testing would be shared variance in the neighborhood of 70% or higher (corresponding to reliability of about .84 or higher).

…

When the goal of inter-rater reliability is preferably in the range of .8 to .9 as noted by Dr. Kane, and the inter-rater reliability of the California Attorney's Examination is consistently reported to be below .5, there can be little doubt that the reliability of the decisions made on the basis of the scores is extremely low, and not acceptable. *See* Exhibit B16 ¶4-7.

47. Dr. Ackerman further concludes the "Attorney's Examination lacks content-related validity," and it "has never been demonstrated to have criterion related validation, in terms of evaluating the scores on the test and comparing them to performance of practicing attorneys."

48. Judge BROWN is now collecting a pension from her long years of service as a California Supreme Court judge, collecting a federal judge pension, and is teaching at Berkeley Law School. The uncontroverted facts that Judge BROWN, a former California Supreme Court Judge suppressed in *Howell* are ugly. *See* Exhibit B:

Grader correlation .41 Feb 2001 (Exhibit B2-3)
Grader correlation  .48 July 2001 (Exhibit B4-5)
Grader correlation .38 Feb 2002  (Exhibit B6-7)
Grader correlation .40 July 2002  (Exhibit B8-9)

COMPLAINT

25

Grader correlation .48 Feb 2002  (Exhibit B10-11)
Grader correlation .39 Feb 2004  (Exhibit B12-13)
Grader correlation .41 July 2004 (Exhibit B14-15)

The industry standard for a test to be valid is .8  to .9 *See* Expert psychometric

opinion by Dr. Ackerman (B-17 ¶7) agreeing with Dr. Kane of NCBE. A single

biased judge can contaminate an entire panel. *Masterpiece Cakeshop, v. Colorado*

*Civil Rights Commission*. 138 S.Ct. 1719 (2018).

49. The Supreme Court has recognized: "Many of the states that have erected

fences against out-of-state lawyers have done so primarily to protect their own

lawyers from professional competition. ….This reason is not 'substantial.' The

Privileges and Immunities Clause was designed primarily to prevent such economic

protectionism." *Piper*, 470 U.S. at 285 fn. 18.

50. The foregoing evidence demonstrates the 100% California bar exam for

experienced attorneys is not a valid or reliable test and it is designed and graded to

provide economic protection. More than sixty percent of already licensed sister-

attorneys have been failed on the entry level California July bar exam on the basis

of a licensing exam less *reliable* than flipping a coin. The test results for this

licensing exam are inadmissible as evidence under the *Federal Rules of Evidence*

701 series and the *Daubert* standards because the test results are neither *valid* nor

*reliable*, they contradict the *Standards,* the ABA legal industry licensing standard of

COMPLAINT

reciprocity, and several Supreme Court decisions including *Frazier v. Heebe* holding

that it will not presume that out-of-state licensed attorneys will not familiarize with

local law or disregard the rules of professional conduct.

**FIRST CAUSE OF ACTION**

**VIOLATION OF 28 U.S.C § 1738**

51. The preceding and   all subsequent allegations are incorporated by reference.

52. Plaintiffs' claim that the challenged local Rules trespass 28 U.S.C § 1738 has  never been addressed by any decision upholding local Rules. JANICE ROGERS BROWN was presented with the terms of this statute. She turned a blind eye to it. The federal right to counsel is inextricably intertwined with the Bill of Rights' protected freedoms to speech, counsel, assembly, and to petition the government for the redress of grievances. Citizens also have a substantive right to counsel and to petition the government with counsel. *General* admission licensing privileges provide a public office that has particular value to the Plaintiffs as an association of licensed lawyers, individual lawyers,  clients, and to  citizens who may want to choose counsel from a nationwide market of legal know-how.

53. 28 U.S.C. § 1654 *Appearance personally or by counsel* provides:

COMPLAINT

In all courts of the United States the parties may plead and conduct their own cases personally or by counsel as, by the rules of such courts, respectively, are permitted to manage and conduct causes therein.

54 U.S.C. § 1738 *State and Territorial statutes and judicial proceedings; full faith and credit*:

"The records of any Court or State are admissible in evidence, and such records shall have the same full faith and credit in every court within the United States as they have by law or usage in the Courts of any such State from which they are taken."

55. Every lawyer is admitted to the bar by a judgment of professional competence by an act and record of a state supreme court. Section 1738 commands that state supreme courts acts and records are entitled to full faith and credit in every United States District Court. "Regarding judgments, … the full faith and credit obligation is exacting." *Baker by Thomas v. General Motors Corp.*, 522 U.S. 222, 233 (1998). There is "no roving 'public policy exception' to the full faith and credit due *judgments*." *Ibid.* (emphasis in original).

56. The challenged local Rules are facially unlawful as they trespass the Congressional command set forth in. 28 U.S.C. § 1738.

## SECOND CAUSE OF ACTION

## VIOLATION OF THE SEPARATION OF POWERS DOCTRINE

57. The preceding and   all subsequent allegations are incorporated by reference.

COMPLAINT

28

58. Neither Judge BROWN nor any other court has ever addressed Plaintiffs' claim that the challenged local Rules violate the separation of powers doctrine. When presented with it, judges either ignore it or pretend the argument is confusing. The argument that the local Rule delegation of federal power to forum state licensing officials, who have not subscribed to a federal oath of office, violates the separation of powers doctrine and *Janus* is clear and unambiguous. It is derived and presented in large part from Justice GORSUCH's book, *A Republic, If You Can Keep It.*

59. In *Nguyen v. United States*, 539 U.S. 69 (2003), the Court considered the question whether a panel consisting of two Article III judges and one Article IV judge had jurisdiction. The Article IV judge did not have life tenure and Article III Court protections. The DOJ argued this structural error had been waived by failure to object and it was harmless error. The Supreme Court reversed and remanded for a new hearing by Article III judges. No court upholding local Rules as rational has addressed Plaintiffs' separation of powers argument. It has been conveniently dodged.

60. First, states are prohibited from exercising federal legislative power. Article I § 1 of the Constitution provides, "All legislative Powers herein granted *shall* be vested in a Congress of the United States, which *shall* consist of a Senate and House of Representatives." States do not have a shred of jurisdiction over many

COMPLAINT

of the enumerated powers including patents, copyrights, bankruptcy, admiralty, federal taxation, federal criminal law, or to prescribe rules necessary and proper for the adjudication of federal claims in the federal courts.  No state bar exam tests the exclusively federal subjects of patents, trademarks, copyrights, bankruptcy, admiralty, or federal taxation.

61. Second, states are prohibited from exercising Article III Court judicial duties. Federal district courts are national courts and have jurisdiction over cases arising under the Constitution. District Judges are nominated by the President and confirmed by the Senate.  They take an oath of office. Article III Court jurisdiction and power is necessary, according to the Great Chief Justice John Marshall because "the mere necessity of uniformity in the interpretation of the national laws decides the question. Thirteen independent courts of final jurisdiction over the same causes, arising upon the same laws, is a hydra in government, from which nothing but contradiction and confusion can proceed." *Cohens v. Virginia*, *supra*, 19 U.S. 264, 415-416 (1821). "[L]ocal Courts must be excluded from a concurrent jurisdiction in matters of national concern, else the judicial authority of the Union may be eluded at the pleasure of every plaintiff or prosecutor." *Id*. at 420.

62. Third, states have no power to govern bar admission in other states or in the federal courts. The right to practice law before federal courts is not governed by

COMPLAINT

State court rules. *Theard v. United States*, 354 U.S. 278, 280 (1956; *Winterrowd v. American Gen. Annuity Ins. Co*. 556 F.3d 815, 820 (9th Cir. 2009).  *Birbrower, Montalbano, Condon & Frank v. Superior Ct*., 17 Cal. 4th 119, 130 (1998).

63. Furthermore, "when a State empowers a group of active market participants to decide who can participate in its market, and on what terms, the need for supervision is manifest."  *North Carolina State Board of Dental Examiners v. Federal Trade Commission*, 135 S. Ct. 1101, 1114 (2015). State agencies controlled by active market participants pose the exact risk of self-dealing. *Ibid*.  These active market participants are not angels. Even assuming the irrational proposition that federal district judges can delegate their Article III Court judicial duties solely to one state's licensing officials, this delegation is annexed without *a* shred of supervision and without any *intelligible standard*.  These local Rules have no consistent standard, let alone an *intelligible standard*.

64. Plaintiffs aver the challenged local Rules are facially unlawful as they trespass the separation of powers doctrine.

## THIRD CAUSE OF ACTION

## VIOLATION OF 28 §§ U.S.C. 2071-72, 332(d)4)

65. The preceding and all subsequent allegations are incorporated by reference.  More particularly, Complaint ¶¶ 4-14 and Exhibit A attached hereto.

COMPLAINT

66. *Howell* and other Circuits have carved out an exception to 28 U.S.C. §§ 2071-72 and 332(d)(4) by holding local Rules do not implicate any substantive rights and need only pass a rational basis standard of review, based on any conceivable evidence in the record or not, in light of the "*professional speech*" doctrine. *Id*. at 19.

67. *Howell* holds: "A single district court judge or an appellate panel may not usurp that body's [Supreme Court and Judicial Council] authority." *Id*. at 18

68. However, after *Howell* was decided, the Supreme Court invalidated the so-called "*professional speech*" doctrine in *NIFLA v. Becerra*, 138 S.Ct. 2361 (2018). The Supreme Court also rejected rational basis review as foreign to First Amendment jurisprudence in *Janus v. AFSCME*, 138 S.Ct. 2448 (2018). The central components on which *Howell* rests*,* the professional speech doctrine and rational basis review, have been overturned.

69. Prior decisions holding local Rules as rational and exempt from review under 28 U.S.C. 2071-72 and 332(d)(4) misread the statute, disregard *Federal Rules of Civil Procedure* 1 and 83(a)(1), and pay no attention to *Becerra* and *Janus,* and the Bill of Rights.

70. These decisions are the product of hostility to anyone who challenges the power and authority that many judges consider their birthright.

\*\*\*\*

COMPLAINT

# FOURTH CAUSE OF ACTION

# VIOLATION OF THE FIRST AMENDMENT

## A. INTRODUCTION – THE LOCAL RULES NULLIFY THE FIRST AMENDMENT FREEDOMS

71. If Congress shall make no law abridging the freedoms to speech, association, and petition, neither can judges abridge these freedoms under the guise of local Rules. In *West Virginia Bd. of Ed. v. Barnette*, 319 US 624, 638 (1943), Justice Robert Jackson famously summarized First Amendment gospel:

> The very purpose of a Bill of Rights was to withdraw certain subjects from the vicissitudes of political controversy, to place them beyond the reach of majorities and officials and to establish them as legal principles to be applied by the courts. One's right to life, liberty, and property, to free speech, a free press, freedom of worship and assembly, and other fundamental rights may not be submitted to vote; they depend on the outcome of no elections.

72. Equally important:

> "If there is any fixed star in our constitutional constellation, it is that no official, high or petty, can prescribe what shall be orthodox in politics, nationalism, religion, or other matters of opinion or force citizens to confess by word or act their faith therein." *Id.* at 642.

*Barnette* means District Judges cannot legislate and rely on local Rules to prescribe First Amendment orthodoxy for any class of citizens.

****

****

COMPLAINT

33

**B. VIOLATION OF PETITION CLAUSE AND PRIOR RESTRAINT**

73. There is no reason to conclude that "religious freedom" is more important than "*petition freedom*."  The local Rules constitute a prior restraint on the right to petition. In *Professional Real Estate Investors, Inc. v. Columbia Pictures Industries, Inc.*, 508 U.S. 49 (1993), the Court, in construing the right to *petition* held "that litigation could only be enjoined when it is a sham.  To be a sham, first, it must be objectively baseless in the sense that no reasonable litigant could expect success on the merits; second, the litigant's subjective motive must conceal an attempt to interfere with the business relationship of a competitor …through the use of government process — as opposed to the outcome of that process — as an anti-competitive weapon." *Id*. at 60-61.  Petitioners submit the local Rules on their face violate the Petition Clause because they presume that the petitioners and all licensed lawyers from 49 states will file sham petitions for an anti-competitive purpose and only file sham petitions.

74. Similarly, in *Legal Services Corp. v. Velazquez*, 531 US 533 (2001), at issue was the constitutionality of prior restrictions on attorney speech enacted by Congress. The Court held the Congressionally imposed restriction on attorney speech was *facially unconstitutional*. *Id*. at 549. (Emphasis added)

\*\*\*\*

COMPLAINT

## C. Viewpoint Discrimination

75. The local Rules on their face constitute viewpoint discrimination. A subject that is first defined by content and then regulated or censored by mandating only one sort of comment is not viewpoint neutral. To prohibit all sides from criticizing their opponents makes a law more viewpoint based, not less so. *Matal v. Tam*, 137 S.Ct. 1744, 1766 (2017). "A law or policy permitting communication in a certain manner for some but not for others raises the specter of content and viewpoint censorship. This danger is at its zenith when the determination of who may speak and who may not is left to the unbridled discretion of a government official." *Lakewood v. Plain Dealer Publishing Co*, 486 U.S. 750, 763 (1988). The government, by enforcing disparate licensing rules suppresses the viewpoints of a disfavored class of licensed lawyers, citizens, and corporations.

## D. Speaker Discrimination

76. The speech-licensing local Rules also constitute *speaker discrimination.* In *Citizens United v. Federal Election Commission*, 130 S.Ct. 876 (2010):

> Quite apart from the purpose or effect of regulating content, moreover, the Government may commit a constitutional wrong when by law it identifies certain preferred speakers. By taking the right to speak from some and giving it to others, the Government deprives the disadvantaged person or class of the right to use speech to strive to establish worth, standing, and respect for the speaker's voice. The Government may not by these means deprive the public of the right and privilege to determine for itself what speech and speakers are

COMPLAINT

worthy of consideration. The First Amendment protects speech and speaker, and the ideas that flow from each. *Citizens United*, 130 S.Ct. at 890

…

Any effort by the Judiciary to decide which means of communications are to be preferred for the particular type of message and speaker would raise questions as to the courts' own lawful authority. Substantial questions would arise if courts were to begin saying what means of speech should be preferred or disfavored. *Id*. at 890 (Emphasis added)

## E. Content Discrimination

77. The*se* licensing rules on their face further constitute content discrimination. This Court in *Reed v. Town of Gilbert*, 135 S. Ct. 2218 (2015) redefined "content discrimination."  The "subject" and "content" of this federal discrimination is federal law and procedure.

## F. Right to Counsel and Association and to Avoid Compelled Association

78.  Plaintiffs aver the local Rules compulsion that anyone who wants to petition the United States District Court for the redress of grievances must select a forum state attorney or forfeit their right to counsel is unconstitutional. It contradicts *Janus v. AFSCME*, 138 S.Ct. 2448 (2018).

79. Litigation is a form of political expression. *In re Primus*, 436 U.S. 412, 428. The First Amendment protects "litigation [as] a means for achieving the lawful objectives of equality by all government."  *NAACP v. Button*, 371 U.S. 415, 429 (1963).  It is thus a form of political expression. *Ibid*. "It is no answer to the

36

COMPLAINT

constitutional claims … that the purpose of these regulations was merely to insure high professional standards and not to curtail free expression." *Id*. at 438-39.

80. Regulations and practices that unjustifiably obstruct the availability of professional representation or other aspects of the right of access to the courts are invalid. *Procuier v. Martinez*, 416 U.S. 396, 419 (1974).   The operations of the courts and the judicial conduct of judges are matters of utmost public concern. *Landmark Communications, Inc. v. Virginia*, 435 U.S. 829, 839 (1978).

81. Plaintiffs aver the government cannot meet its burden of proof under strict scrutiny review. Plaintiffs further aver this federal licensing discrimination carried out under the guise of local Rules cannot even survive rational basis review. If it is irrational to disqualify someone for licensure because of oath as in *Schware v. Bd. of Bar Examiners*, 353 U.S. 232 (1957),or because they are Democrat or Republican, or black, or female, or gay, or Jew or Gentile, it is equally irrational to disqualify an experienced attorney based on what state they are or are not licensed.

## FIFTH CAUSE OF ACTION

## VIOLATION OF THE FIFTH AMENDMENT EQUAL PROTECTION

82. The preceding and   all subsequent allegations are incorporated by reference.

COMPLAINT

37

83. The challenged local Rules are not neutral and generally applicable. The Florida and California local Rules are mirror opposites.   The purpose of diversity jurisdiction is to provide a neutral forum. That purpose is defeated by the local Rule reliance on forum state law on both federal and diversity claims in two-thirds of the district courts.

84. This Article III Court delegation of federal duty to state sponsored public trade unions further nullifies *Federalist Paper* 10, which holds a core benefit of our Union is to dissolve local faction.  It provides:

> AMONG the numerous advantages promised by a well-constructed Union, none deserves to be more accurately developed than its tendency to break and control the violence of faction.
> …….
> By a faction, I understand a number of citizens, whether amounting to a majority or a minority of the whole, who are united and actuated by some common impulse of passion, or of interest, adverse to the rights of other citizens, or to the permanent and aggregate interests of the community.

85. The local Rules promote faction. They pit citizens of one state against another. In *United States v. Windsor*, 133 S.Ct. 2675 (2103),  the Court held the federal government is required to accord same sex citizens equal rights and their marriage licenses full faith and credit in the federal context. The rights to counsel, association, and petition are textually embedded in the Constitution. They predate the fundamental right to marriage equality by over two hundred years.

COMPLAINT

86. Plaintiffs aver the constitutional right to equal protection is a substantive right that fails to conform to the local Rule standard "shall not abridge, enlarge, or modify any substantive rights." 28. U.S. C. 2072(b). Congress has legislated an even playing field for all citizens. The scales of justice are impermissibly tilted and not equal.

## SIXTH  CAUSE OF ACTION

## VIOLATION OF THE FIFTH AMENDMENT DUE PROCESS

## AND CODE OF CONDUCT FOR UNITED STATES JUDGES

87. The preceding and  all subsequent allegations are incorporated by reference.

88. *Code of Conduct for United States Judges.* Canon 2 provides:

"A Judge Should Avoid Impropriety and the Appearance of Impropriety in all Activities"
"(B) Outside Influence. A judge should not allow family, social, political, financial, or other relationships to influence judicial conduct or judgment. A judge should neither lend the prestige of the judicial office to advance the private interests of the judge or others nor convey or permit others to convey the impression that they are in a special position to influence the judge. "

89. These speech-licensing local Rules on their face stem from a social, political, and financial relationship with forum state public trade unions that regularly engage in lobbying and litigation on political matters of public concern.

COMPLAINT

The *Code of Conduct for United States Judges* prohibits this preferential relationship with a political trade union.

90. The constitutional right to Due Process is a substantive right. A part of that right is fair and neutral fact-finder and the warrant to avoid even the appearance of bias. Plaintiffs cannot get a fair hearing when the judge has already predetermined the  viewpoints of one state's lawyers and one state's licensing protocols are superior to another.  This is anathema to Due Process.

Plaintiffs therefore request the following relief:

• An Order and Judgment declaring the local Rules that deny general bar admission privileges to otherwise qualified attorneys in good standing based on forum state law or office location in the Ninth and Eleventh Circuits are unlawful and providing injunctive relief enjoining such local Rules.

• An Order and Judgment declaring the local Rules that deny general bar admission privileges to otherwise qualified attorneys in good standing based on forum state law or office location are unlawful and providing injunctive relief enjoining such local Rules.

• Costs.

• Attorney fees.

COMPLAINT

40

- Grant such other relief as may be just and proper.

Dated:  January 3, 2022                 Respectfully submitted,

*/s/ Joseph Robert Giannini*
Joseph Robert Giannini, Esq.
PA State Bar 38814
12016 Wilshire Blvd. Suite 5
Los Angeles, CA 90025
Phone 310 804 1814
Email holmes@lawyers-inc.com

COMPLAINT

41